McDONALD <em>vs.</em> BUNN, sheriff, &c.

In an action against a sheriff for a false return to a *fi. fa.* the plaintiff must show a valid judgment upon which the writ issued.

A judgment cannot, independently of the statute, (*Laws* 1840, *p.* 334, § 23,) be rendered in vacation.

Accordingly, where a party, in order to prove a judgment of this court, produced an authenticated copy of a record which stated the suit to have been commenced by declaration, and that issue was joined in July term, 1839, and that the cause was referred to a sole referee, who on the 9th day of September, 1842, reported in favor of the plaintiff, upon which judgment was immediately entered, the record being signed and filed on the 16th day of the same month, and there being no statement of any continuance or mention of any term after the commencement of the suit; *held* that the alleged judgment was void.

The provisions of the act of 1840, authorizing the entry of judgments in vacation, has no effect upon judgments in suits commenced before that act took effect.

The repeal in 1844, (*Stat. p.* 92, § 8,) of the provision in the act of 1840, which

McDonald *v.* Bunn.

limited the operation of the last mentioned act to suits commenced after it took effect, does not retroact so as to render valid a judgment entered in vacation, in a suit commenced in 1839.

CASE against the defendant, as sheriff of Montgomery county, for a false return to a *fi. fa.* issued upon a judgment in favor of the plaintiff in this suit, against R. C. Davidson, tried at the Montgomery circuit in November, 1843, before WILLARD, C. Judge. Plea, not guilty.

On the trial, the plaintiff gave in evidence an authenticated copy of a paper alleged to be the record of a judgment in this court in his favor, against Davidson. The *placita* was of July term, 1839. *Memorandum*, of the filing of the declaration on the 14th September, 1839, of July term preceding. Then followed the declaration, which was in assumpsit on the common counts, a plea of *non assumpsit* and an order for the trial of the issue at the next circuit in Montgomery on the 18th day of November next. The next entry is that the issue not being tried, the cause was referred to J. F., sole referee, pursuant to the statute, but it is not stated when or where this order for a reference was made. The record proceeds, " and now at this day, to wit, on the *ninth day of September*, 1842, before the justices aforesaid, come the parties aforesaid, by their attorneys aforesaid, and hereupon the said referee, duly appointed, makes his report in writing under his hand to the said court, in the words and figures following." The report is then inserted, bearing date September 9th, 1842, finding that there is due the plaintiff $142, besides costs. "Therefore it is considered," &c., setting out the entry of judgment in the usual form for the amount reported, with $50,69, costs. The record is signed September 16th, 1842, and is filed on the same day. The plaintiff also gave in evidence a *fi. fa.* issued on the judgment, and delivered to the sheriff on the 26th day of September, 1842, and returned *nulla bona* in January, 1843; and then proved the facts on which he relied to show that the return was false. The defendant moved for a nonsuit, on the ground that the record showed that the referee's report was made and that judgment was entered in *vacation*, and that the judgment and all subsequent proceedings were for that reason

void. The motion was denied and the defendant excepted. Evidence was then given on the part of the defendant, and a verdict was rendered for the plaintiff. The defendant moves for a new trial on a bill of exceptions.

*N. Hill Jr.*, for the defendant. 1. The judgment was void. (*Taylor* v. *Moffitt*, 2 *Blackf.* 305; *Griswold* v. *Stewart*, 4 *Cow.* 457; *The case of Randal and his wife*, 2 *Mod.* 308; *Rex* v. *Bowman*, 6 *Carr. & Pay.* 337; *The King* v. *Smith*, 8 *Barn. & Cress.* 341; 8 *Penning. R.* 151; 1 *Green's* (*N. J.*) *R.* 144.) 2. If the judgment was void, the defendant was not bound to execute it, though if he had done so he might have justified under the process. (*Earl* v. *Camp*, 16 *Wend.* 562; *Albee* v. *Ward*, 8 *Mass.* 79; 6 *Coke*, 54; *Cornell* v. *Barnes*, 7 *Hill*, 35.)

*S. Stevens*, for the plaintiff. 1. The defect in the record is at most an irregularity, and of this no advantage can be taken after one year, (2 *R. S.* 359, § 2,) and that period had elapsed at the time of the trial. 2. But the judgment was entirely regular. By the statute, (*Laws* 1840, *p.* 344, § 23,) judgments may be entered in term or vacation. It is true that by § 38, the act did not take full effect upon suits commenced prior to June 1, 1840: still it had a certain operation from its passage. The twenty-fifth section declares that no judgment or decree entered after the act takes effect, shall be a lien unless docketed with the county clerk; but this court in *Ex parte Becker*, (4 *Hill*, 613,) held that this provision applied to judgments in suits pending on the 1st June, 1840. 3. The thirty-eighth section has been unconditionally repealed. (*Stat.* 1844. *p.* 92, § 8.) As regards the question now before the court, the act should be construed as though § 38 had never been a part of it. (*Butler* v. *Palmer*, 1 *Hill*, 324.) 4. The sheriff cannot avail himself of the irregularity in the judgment. (*Savacool* v. *Boughton*, 5 *Wend.* 170; *Ames* v. *Webbers*, 8 *id.* 545; *Parmelee* v. *Hitchcock*, 12 *id.* 96.)

*By the Court*, BEARDSLEY, J. In an action against a sheriff for a false return of *nulla bona* to a writ of *fieri facias*, the

plaintiff must show a valid judgment to uphold the process. The judgment constitutes an essential ingredient in the plaintiff's right of action, and is invariably alleged in the declaration in such cases. (2 *Chit. Pl. 7th Amer. ed.* 748; 2 *Stark. Ev. 7th Amer. ed.* 1016; 2 *Phil. Ev.* 403.)

The general rule, where a sheriff is sued for any thing done by him in obedience to the command of final process in his hands, certainly is, that he need not set up a judgment in order to justify himself, but may rely on the process alone for that purpose. This, however, is a rule for his convenience and protection, and does not imply that it is the duty of the officer to proceed, where there is no judgment. An action for a false return lies for a wrong done to the plaintiff by a refusal to execute lawful process issued in his favor. But a writ of *fieri facias* alone gives no right to the plaintiff, and proves no cause of action in his favor. The right arises upon the judgment and the execution issued to enforce it; and if no judgment has in fact been rendered, the execution imposes no duty on the officer, whatever protection it might afford him. (*Cornell* v. *Barnes*, 7 *Hill*, 35.)

It has been held that where a judgment had in fact been rendered for the plaintiff, the sheriff, in an action for a false return to an execution issued on such judgment, might defend himself by showing that the judgment was fraudulent, and for that cause void in law. (2 *Stark. Ev.* 1018; 2 *Phil. Ev.* 404; *Tyler* v. *The Duke of Leeds*, 2 *Stark. R.* 218; *Penn* v. *Scholey*, 5 *Esp.* 243; *Harrod* v. *Benton*, 8 *B. & C.* 217.) But this point need not be considered in the present case; for here the question arises on the evidence given by the plaintiff. He was bound to prove a legal judgment to uphold the execution in his favor; and the question is, did he show that any such judgment had been rendered?

The plaintiff read in evidence, what was called an exemplified copy of the record of a judgment in his favor, and which was the only proof furnished of any judgment to uphold the execution. By this evidence it appears that an action was commenced in this court, in favor of the present plaintiff and against Davidson, of July term, 1839; that it was put at issue and noticed for

McDonald *v.* Bunn.

trial in November of the same year, and was then referred to a sole referee; that on the 9th of September, 1842, the referee made a report in favor of the plaintiff, upon which, as this alleged record states, a judgment was at that time rendered. This is substantially all the supposed record contains. It makes mention of but a single term, that of July, 1839, and it is impossible to infer or assume, upon what is stated, that this judgment, so called, was rendered at that or any other term of the court. The writing cannot be made to mean that the judgment, or what is spoken of as a judgment, was rendered on any other day, or at any other time, than the 9th of September, 1842. But the July term of that year had terminated long before that time; it could not, by law, endure for any purpose, beyond five weeks, and must have ended early in August. The next succeeding term was in October, so that this pretended judgment appears by the record to have been rendered in vacation, and not in term time. I see no way, upon the evidence, to escape this conclusion.

A judgment is the sentence of the law as pronounced by the court. (3 *Bl. Com.* 395; *Bing. on Judg. and Executions,* 1.) But the court can only be held in term time, and for the purpose of rendering judgments it has no existence in vacation. Consequently a judgment cannot be rendered in vacation; and evidence, although in form that of a record, which states that a judgment was rendered in vacation, shows what could not possibly have occurred, and is therefore intrinsically null and void. I speak of the law as it stands, independently of the act of 1840, which declares that "Judgments may be entered and perfected at any time in term or vacation." (*Laws* 1840, *p.* 334, § 23.) What may be done under the authority of this provision is one thing, but in cases to which it does not apply, a record which states that a judgment was rendered in vacation, affirms an impossibility, and therefore proves nothing whatever. The paper, read in evidence on this trial, as a record, was signed and filed on the 16th of September, 1842, and it states that the judgment was rendered on the 9th of that month. We know that the court was not, and could not have been, in session on either of those days, and that a judgment could not have been rendered

as this alleged record states. Unless therefore this supposed judgment and record can be upheld under the act of 1840, it is plain they must be wholly disregarded, and then as no judgment to uphold the plaintiff's execution was proved, he should have been nonsuited on the trial.

But the twenty-third section of the act of 1840, which has been copied, had no application to the case in which this alleged record was filed. That action was commenced in 1839, and the act of 1840, (§ 38,) expressly declares that, "This act shall not affect any suit, or proceeding, nor the fees or costs therein, which shall be commenced before the same shall take effect." Rendering a judgment, or the entry of one, is a step in a suit, and as the suit referred to was commenced before the act of 1840 took effect, it had no application to the case, and cannot give vitality to this alleged judgment and record. It might be urged with plausibility, at least, that a suit ends with the judgment rendered therein, and therefore that such things as usually follow the rendering of judgment, as its docket and an execution, are not excluded from the provisions of the act of 1840, by the thirty-eighth section. And yet it has been adjudged that the *twenty-fourth* section, which gives a new form of execution, does not apply to suits commenced before that act took effect, but is excluded by this thirty-eighth section. (*Ex parte Becker*, 4 *Hill*, 616, *and cases cited.*) It would seem to be inconsistent, if not absurd, to hold that a judgment, in a suit commenced before 1840, may be entered under the act of that year, but that execution can only issue in conformity with the former law; and whatever my opinion might have been, as to the execution, I have no doubt that the judgment, in such a suit, must be rendered and entered under the former law, and not as may be authorized in cases falling within the act of 1840.

I am aware that it has been held that the lien of all judgments entered after the act of 1840 took effect, without regard to the time when the suit, in which the judgment was rendered, was commenced, depends upon their being docketed as required by that act. (*Ex parte Becker, supra.*) But this was adjudged on the peculiar terms of the statutes, which seem to demand

McDonald *v.* Bunn.

such a construction. But in addition to this consideration, I think the terms of the *thirty-eighth* section do not apply to that part of the act which prescribes the mode in which judgments shall be docketed.

The act, it will be observed, regulates, in various respects, *suits,* as well as *proceedings* which are not strictly suits, and the fees and costs in each; and it also regulates some things which are neither suits nor such proceedings. This will be quite apparent on looking through the act. By the thirty-eighth section, all suits and proceedings commenced before the act took effect, and the fees and costs in such suits and proceedings, are wholly excluded from this act. But nothing is excluded by the section which is not a suit or a proceeding on which there may be costs; and the docketing of judgments, as the act directs, is neither. Docketing a judgment is no part of a suit, nor a step in one. It may follow upon the termination of a suit, or may not, at the election of the party. The suit ends with the judgment, whether that is docketed or not. Nor is the docket any such proceeding, as is referred to in the thirty-eighth section. That means a proceeding in which costs or fees are allowed, as for instance a writ of *certiorari, procedendo, prohibition* or *mandamus.* (§ 3, 5.) The section also refers to suits and proceedings which import duration and continuance in their progress to a close: such, in the words of the section, as "shall be *commenced* before the" act took effect, and were still undetermined. The docket of a judgment, as required by this statute, is not such a suit or proceeding, nor any part of either; and therefore, as the court held in *Ex parte Becker,* all judgments recovered after the act of 1840 took effect, no matter when the cause was commenced, were required to be docketed in conformity with that act, in order to become a lien on the estate of the judgment debtor.

But the thirty-eighth section of the act of 1840, was repealed in 1844, (*Laws* 1844, *p.* 92, § 8,) and this, it is said, leaves the twenty-third section, authorizing judgments to be entered and perfected in vacation as well as in term, in full force *ab initio.* But no such effect can be attributed to this repealing statute. It

merely abrogated what was then a part of the act of 1840, but did not assume to make valid what was then absolutely null and void. How far this could have been done by the legislature, we need not stop to inquire, for it is plain no such effect can be given to a simple repeal of the thirty-eighth section. What is here spoken of as a judgment of September, 1842, was invalid at that time, and it is so now, notwithstanding the repealing act of 1844. Being void, the plaintiff failed to prove any right to recover, and a nonsuit should have been granted.

New trial granted.